**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**AKF, INC. D/B/A FUNDKITE,**

**Plaintiff,**

**vs.**

**1:22-CV-346 (MAD/DJS)**

**ROYAL PETS MARKET & RESORT HOLDINGS, LLC; ROYAL PETS MARKET & RESORT PINELLAS, LLC; ROYAL PETS MARKET & RESORT MIDTOWN, LLC; ROYAL PETS MARKET & RESORT D & B HOLDINGS, LLC; ROYAL PETS MARKET & RESORT ST. PETERSBURG, LLC; ROYAL PETS MARKET & RESORT ENTERPRISES, LLC; DENISE WOLIN a/k/a DENISE WOLIN-GORE; and BRYAN MCGOLDRICK,**

**Defendants.**

---

**APPEARANCES:** **OF COUNSEL:**

**KAMINSKI LAW, PLLC** **SHANNA M. KAMINSKI, ESQ.**
P.O. Box 725220
Berkley, MI 48072
Attorneys for Plaintiff

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On April 12, 2022, AFK, Inc., doing business as FundKite ("Plaintiff"), commenced this action against Defendants Royal Pets Market & Resort Holdings, LLC ("Royal Pets Holdings), Royal Pets Market & Resort Pinellas, LLC ("Royal Pets Pinellas"), Royal Pets Market & Resort Midtown, LLC ("Royal Pets Midtown"), Royal Pets Market & Resort D & B Holdings, LLC ("Royal Pets D & B"), Royal Pets Market & Resort St. Petersburg, LLC ("Royal Pets St.

Petersburg"), Royal Pets Market & Resort Enterprises, LLC ("Royal Pets Enterprises"), Denise Wolin also known as Denise Wolin-Gore ("Wolin"), and Bryan McGoldrick ("McGoldrick") for breach of contract and breach of performance guaranty. *See* Dkt. No. 1. Currently before the Court is Plaintiff's motion for default judgment. *See* Dkt. No. 10. Defendants have not filed an answer or otherwise appeared in this action.

**II. BACKGROUND**

Plaintiff is a New York corporation with its principal place of business at 88 Pine Street, 17th Floor, New York, New York 10005. *See* Dkt. No. 1 at ¶ 1. Defendants Royal Pets Holdings, Royal Pets Pinellas, Royal Pets Midtown, Royal Pets D & B, Royal Pets St. Petersburg, and Royal Pets Enterprises are all Florida limited liability companies with their principal place of business located in Florida. *See* Dkt. No. 1 at ¶¶ 2-7. Defendants Wolin and McGoldrick are individuals who are citizens of Florida. *See id.* at ¶¶ 8-9.

Plaintiff and Defendant Royal Pets Holdings entered into a Revenue Purchase Agreement ("Agreement") on or about January 28, 2022, wherein Plaintiff was to purchase $533,540 in Receipts from Defendant Royal Pets Holdings. *See* Dkt. No. 1 at ¶ 13. Receipts, under the Agreement, are defined as Defendant Royal Pets Holdings'

> future sales, accounts, contract rights and other obligations and entitlements arising from or relating to the payment of monies from [Defendant Royal Pets Holdings'] customers and/or third party payer and the proceeds thereof including, but not limited to all payments made by cash, check, electronic transfer or other form of monetary payment in the court of [Defendant Royal Pets Holdings'] business.

Dkt. No. 1-1 at 4.

Additionally, Defendants Royal Pets Pinellas, Royal Pets Midtown, Royal Pets D & B, Royal Pets St. Petersburg, Royal Pets Enterprises, Wolin, and McGoldrick (collectively referred to as the "Guarantors") signed a Guaranty of Performance the same day. *See* Dkt. No. 1 at ¶ 14.

Under the Guaranty of Performance, the Guarantors promised to, among other things, ensure Defendant Royal Pets Holdings' "obligation to deliver Receipts as required by the Agreement without interruption by way of 'stop payment' or any 'block' on [Plaintiff 's] debits." Dkt. No. 1-1 at 16; Dkt. No. 1 at ¶ 14.

Under the Agreement, Defendant Royal Pets Holdings was to sell their Receipts, worth $533,540, to Plaintiff at a discounted price of $358,049 ("Disbursement Amount"). *See* Dkt. No. 1-1 at 2. The Disbursement Amount is the agreed upon Purchase Price of $381,100 minus $23,051 in service fees. *See id.* Defendant Royal Pets Holdings was then required to deliver nine percent ("Remittance Percentage") of their Receipts to Plaintiff weekly until $533,540 worth of Receipts have been delivered. *See id.* at 3; Dkt. No. 1 at ¶ 16. The amount to be paid weekly to Plaintiff by Defendant Royal Pets Holdings was $13,338.50 ("Initial Estimated Delivery Amount"). *See* Dkt. No 1-1 at 2; Dkt. No. 1 at ¶ 15. The Initial Estimated Delivery Amount was calculated as being 9% of weekly Receipts based on Defendant Royal Pets Holdings' average monthly gross receipts prior to the Agreement. *See* Dkt. No. 1-1 at 3; Dkt. No. 1 at ¶ 16.

If Defendant Royal Pets Holdings defaults, the Agreement provides that "the Remittance Percentage shall equal 100% and the full uncollected Purchase Amount of all Receipts plus all fees and charges (including reasonable attorney's fees, costs and default fees) due under this Agreement will become due and payable in full." Dkt. No. 1-1 at 8. Appendix A of the Agreement states that in the event of a default, the default fee is equal to "25% of the total amount of Purchased Receipts outstanding." *Id.* at 21.

The Complaint alleges that Plaintiff wired the Disbursement Amount to Defendant Royal Pet Holdings on February 2, 2022, *see* Dkt. No. 1 at ¶ 18, and payments of the Initial Estimated Delivery Amount to Plaintiff commenced thereafter, *see id.* at ¶ 19. It further alleges that on

April 8, 2022, Plaintiff was notified that they could not debit the Initial Estimate Delivery Amount due to a block Defendant Royal Pets Holdings had placed on its account. *See id.* at ¶ 20. The Agreement specifies that an Event of Default may, among other things, be that Plaintiff "is unable, at any time, to successfully debit the Designated Account due to any 'block' placed on [Plaintiff's] debits." Dkt. No. 1-1 at 8.

In the Complaint, Plaintiff alleges $413,493.50 in unobtained Receipts and $103,373.38 as the default fee. *See* Dkt. No. 1 at ¶¶ 24-25. Combined with pre-judgment interest and the filing fee, Plaintiff alleges a total of $519,068.85. *See* Dkt. No. 10 at 1.

## III. DISCUSSION

### A. Standard of Review

"Generally, 'Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant.'" *United States v. Simmons*, No. 10-CV-1272, 2012 WL 685498, *2 (N.D.N.Y. Mar. 2, 2012) (quoting *Robertson v. Doe*, No. 05-CV-7046, 2008 WL 2519894, *3 (S.D.N.Y. June 19, 2008)). "'First, under Rule 55(a), when a party fails "to plead or otherwise defend ... the clerk must enter the party's default."'" *Id.*; *see also* Fed. R. Civ. P. 55(a). "'Second, pursuant to Rule 55(b)(2), the party seeking default is required to present its application for entry of judgment to the court.'" *Id.* "'Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment.'" *Id.*; *see also* Fed. R. Civ. P. 55(b)(2).

"When a default is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability." *Bravado Int'l Group Merch. Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 188 (E.D.N.Y. 2009) (citing *Greyhound*

*Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)). "While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) (citations omitted); *see also Bravado Int'l*, 655 F. Supp. 2d at 189-90 (citation omitted). "[E]ven upon default, a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are sought." *Overcash v. United Abstract Group, Inc.*, 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). "The burden is on the plaintiff to establish its entitlement to recovery." *Bravado Int'l*, 655 F. Supp. 2d at 189 (citing *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158). "While 'the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing.'" *Id.* at 190 (quotation and other citation omitted).

**B. Default Determination**

***1. Breach of Contract***

In their first cause of action, Plaintiff alleges that Defendant Royal Pets Holdings blocked payments which constituted a breach of the Agreement. *See* Dkt. No. 1 at ¶ 29.

To make out a breach of contract claim against a defendant under New York law a plaintiff must show: "(1) the existence of a contract between itself and defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by defendant; and (4) damages to the plaintiff caused by defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011) (citations omitted).

Here, Plaintiff has sufficiently alleged a breach of contract claim. With the Complaint, Plaintiff attached the relevant contract, signed by all parties, which states Plaintiff's and

Defendant Royal Pets Holdings' general obligations under the contract, *see* Dkt. No. 1-1 at 3, and relevant default terms, *see id.* at 8. Further, Plaintiff properly alleged performance of their duty to wire Defendant Royal Pets Holdings the Disbursement Amount, *see* Dkt. No. 1 at ¶ 18, and default on the part of Defendant Royal Pets Holdings by placing a block to prevent Plaintiff's debits, *see id.* at ¶ 20. Plaintiff also demonstrates that they have not received full performance by alleging an amount of unpaid Receipts. *See id.* at ¶ 30. These allegations are sufficient to state a plausible breach of contract claim.

***2. Breach of Performance Guaranty***

In their second cause of action, Plaintiff alleges that the Guarantors, as listed above, breached the Guaranty of Performance. *See* Dkt. No. 1 at ¶ 33.

To show breach of guaranty, Plaintiff must establish "(1) an absolute and unconditional guaranty, (2) the underlying debt, and (3) the guarantor's failure to satisfy the unpaid debt." *Merchant Cash & Capital, LLC v. Haute Soc'y Fashion, Inc.*, No. 16-CV-2696, 2017 WL 2912452, *2 (E.D.N.Y. July 5, 2017) (citing *Myers Indus., Inc. v. Schoeller Arca Sys., Inc.*, 171 F. Supp. 3d 107, 121 (S.D.N.Y. 2016)). *Merchant Cash* found that a guarantor of the contract made a personal guarantee to not only guarantee performance but also payment of the defendant Haute Society. *See id*. Though there was no explicit term in the agreement that the guarantor must guarantee payment, the court inferred it from the guarantee of "performance of all of the covenants," with the most crucial covenant being repayment. *Id.* at *3.

Here, the Guarantors were under obligation to "unconditionally guarantee" to Plaintiff that Defendant Royal Pets Holdings would perform all of the enumerated obligations. *See* Dkt. No. 1-1 at 15. One of those obligations being that Plaintiff's debits from Defendant Royal Pets Holdings' accounts would not be blocked or interrupted in any way. *See id*. As alleged in the

complaint, Defendant Royal Pets Holdings placed a block on their account. *See* Dkt. No. 1 at ¶ 20. This effectively placed them in debt to Plaintiff in the amount of their unpaid Receipts. *See id.* at ¶ 24. By failing to guarantee performance and address Defendant Royal Pets Holdings' debt to Plaintiff, the Guarantors have breached the performance guaranty and are liable for the breach.

**C. Damages**

Having established liability as to the breach of contract claim and breach of performance guaranty claim, the Court now addresses whether Plaintiff's motion is sufficient to award damages without need of a hearing or additional briefing. Though well-pleaded allegations of liability in the Complaint are presumed true, the Court cannot "rely on the plaintiff's unsupported allegations to establish its damages," *GlobeRunners Inc. v. Envtl. Packaging Techs. Holdings, Inc.*, No. 18-CV-4939, 2020 WL 1865536, *3 (S.D.N.Y. Mar. 6, 2020) (citing *Greyhound Exhibitgroup*, 973 F.2d at 158). Further, as this Court has previously noted, "allegations in a complaint and an affidavit of plaintiff's counsel asserting the amount of damages sustained by the plaintiff, with nothing more, is insufficient evidence upon which to ascertain the damage award." *Viet Gragg v. Int'l Mgmt. Group*, No. 5:03-CV-904, 2008 WL 2705366, *2 (N.D.N.Y. July 1, 2008) (citing *Alcantara*, 183 F.3d at 155 (2d Cir. 1999)).

In the present matter, the Court finds that Plaintiff has not met this burden by failing to provide the Court with necessary evidence to support an award of damages. The allegations made in the Complaint provide figures with no indication of how they were reached. *See* Dkt. No. 1 at ¶¶ 24, 25, 30. Further, Plaintiff's Motion for Clerk's Entry of Default Judgment only breaks down the amount into Principal, Pre-Judgment Interest Rate, and Costs and Disbursements. *See* Dkt. No. 10 at 2. The Principal is merely declared as $516,866.88 and is not further explained with mathematic or factual support. *See id.* Plaintiff states in its Complaint that they have not received

$413,493.50 worth of Receipts and that the default fee equals $103,373.38, *see* Dkt. No. 1 at ¶¶ 24, 25, yet Plaintiff provides no competent evidence or an affidavit of an individual with personal knowledge. As such, Plaintiff's request for damages is denied without prejudice. Plaintiff, in renewing their application, shall provide the Court with detailed affidavits demonstrating their basis for the alleged damages as well as any documentary evidence necessary to support those claims.[1]

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's motion for default judgment is **GRANTED as to liability** and **DENIED as to damages**; and the Court further

**ORDERS** that Plaintiff shall supplement its motion as to its claimed damages, as set forth above, within **THIRTY (30) DAYS** from the date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 7, 2022
Albany, New York

Mae A. D'Agostino
U.S. District Judge

[1] The Court notes that in a diversity case, prejudgment interest is calculated at New York State's rate of nine percent per annum as opposed to the federal prejudgment interest calculation under 28 U.S.C § 1961. *See Schipani v. McLeod*, 541 F.3d 158, 164-65 (2d Cir. 2008) (citing *Baker v. Dorfman*, 239 F.3d 415, 425 (2d Cir. 2000)); N.Y. C.P.L.R. § 5001-5004.